3-5 Norma, Iris, Miranda, Rivera, et al. versus Pedro, Toledo, Davila, et cetera, et al. May I proceed? Yes, please. Okay. Good morning. For the record, Pedro Vasquez on behalf of the plaintiff, appellant, Norma Miranda, may it please the court, sister counsel, good morning. Let me just start by saying that the plaintiff appellant does not contest the initial stop of what occurred here when the police detained, first stopped and then detained the defendant from the scene of where he's detained into the station house. That's where the real factual dispute occurs here. In the most basic, the most basic question in this case is what caused Christopher's death, Christopher Rojas' death? Was it, as the was subjected to? As should be clear from the record, the district court dismissed or just tossed out our expert forensic report, which pretty much had very consistent findings with the autopsy report of the Forensic Science Institute of the Commonwealth of Puerto Rico. The only And that's really the discrepancy in those two reports. In that sense, we think, we believe that the district court's ruling on the non-consideration of that report is contrary to law. Counsel, can your, can your claim survive, can your claim survive without consideration of the expert witnesses report? Is it your position that that, well, to restate that question, is that report, which does go to causation, really indispensable to your case? My understanding is yes, because it controverts then the forensic science autopsy report, which says cocaine intoxication, trauma, and the trauma was an accident. How the forensic science office determines accident, it's not entirely clear, because there is no interview with anybody at the scene. There is no interview with any of the police officers. How that scientist, how that doctor arrives at that Look at the photographs that were submitted in the appendix. We've got also an additional expert on police practices that says, looking at those photographs, this is indicative of excessive force. What those photographs reflect, it looks like somebody that was subjected to a chain gang initiation. That's a material that the Pretty much ignored those photographs of what happened in there. We also have, your honor, a part of the protocol was when there is a death, a prosecutor and a homicide detective have got to come in and review the scene. An investigative, an investigative homicide detective came in and described violence, and that was not The cause of death is not, strictly speaking, relevant to your claim? I think that the cause of death is very relevant. Can I understand why? Because you're not bringing a wrongful death suit. No. Right. So all you're trying to show is that there was excessive force. Yes. So there could be excessive force, even if the reason he died was because of the cocaine. Well, I mean, the pictures are the pictures. I don't quite understand what the relevance of the cause of death is on your theory. Well, our expert, our expert witness, what he says is what caused the death. But I'm asking a different question. Why do we care what caused the death? What we care about is whether there was excessive force. I don't think that you can separate them, Judge. Why? He either on your theory, he either was beaten or he wasn't beaten and he was beaten inappropriately. Yes. Or he wasn't. Right. Whether that's what killed him is a distinct question from whether excessive force was used. OK. So I don't quite understand what the. Significance of this dispute about what caused the death is, is the idea that if the cocaine caused the death, that shows there was no excessive force. I don't really understand why that would be. Well, basically, what the district court is saying is that whatever happened to him in terms of whether or not there was excessive force used. I'm not sure I'm following your question, Judge. Well, I mean, you clearly, even in the absence of death, you could have brought an excessive force claim, right? Yes. But in a sense, you're the. The death, I guess, from your point of view, strengthens the proposition that there was excessive force. He died because of what, from your point of view, what happened, what was done to him, is that your. Correct. OK. But. In order, please, I'm sorry, your own expert offered the report that was excluded, but your own expert said that Rojas suffered from some injuries that showed body trauma, correct? Yes. So if, if, if that evidence is accepted, this is further to my colleague's question, what difference does it make that the actual cause of death was cocaine overdose? Well, I, I, I think that what's, what becomes critical there, Judge. I mean, if your client had stage four prostate cancer and, and, and was assaulted inappropriately through the use of excessive force by police agents, and then he's found dead in his cell and an autopsy reveals that the cause of death was prostate cancer, that doesn't rule out that he was, in fact, subjected to excessive force, does it? Well. I think that's the point of the question. This is helpful to you. Yes. Yeah, I know. But under, under that, under that logic, then you can beat him up, but it doesn't matter, or you can shoot him and it doesn't matter because the cancer was going to kill him anyway. No, no, no, no, no, no, no, no. I have a question that might actually help your case. Okay. And I think you've just heard three of them. I think what we're suggesting is you don't, if we understand your claim correctly, you needn't show that the cause of death was the trauma. You only need to show that there was trauma that would support a finding of excessive force. Yes. Okay. And then our question is put aside what caused the death. Okay. What evidence is there that there was trauma sufficient to show excessive force? The photographs. Photographs alone? Yes, the photographs alone. So that goes back to Judge Lopez's question to you. Do you even need the expert's testimony in, or could you win on the basis of the photographs alone? I think, I do believe that I do need that expert report. And let me backtrack, which I think will buttress my answer. There is one eyewitness that is not a defendant who says at the time that he was arrested, all he had was a small cut on his lip. I mean, this guy had no markings on him. And then when you look at the photographs, they're pretty disturbing. Right. So I do believe that the, I understand your question, but I do believe that the expert witness report, because of the contest of what causes the death, I do believe it becomes critical in this case. Counsel, with respect to the expert report, you know, we do know that the deceased was acting out in a rather violent way. I mean, there's testimony about his thrashing about resisting being put in the cell. And there's nothing that I see in this expert witness's report that explains how he, he talks about blunt trauma. And he then asserts that it was the result, at least he wants a reader to draw the inference, that that was the result of intentional blows that were struck by officers. Does he ever explain how he's able to distinguish from the bodily injury, why they were inflicted through intentional blows by another party, as opposed to injuries he might have inflicted on himself because of the way he was acting out? Well, not specifically the way you're asking it, but what the expert report does say is that, you know, looking at the markings in the photographs and the evidence of trauma, that this is indicative of stomping and of just impact. And, I mean, once he's restrained, it's just unexplainable the amount of lesions that he's got all over his body. Isn't that why the district court excluded your expert? Because in the district court's opinion, your expert did not rule out other causes for the body trauma. Yes, that is correct. Isn't that central to the case? Well, not necessarily. I think, Judge, with all due respect, I think that's subject for cross-examination. Do you have to be able to categorically pinpoint the exact precise cause? The case law doesn't necessarily suggest that. Once there's enough facts discussed and the expert provides a plausible conclusion, then it's subject to cross-examination. There was one point, I think, in your expert's report that seems to diverge from the government's expert's account, apart from the cause of death, if I'm reading it right, but I could be wrong. I thought your expert says that there was evidence of coup and contra coup trauma. Yes. Am I right that the government denies that that trauma exists, apart from what the effect of that trauma was? I read their report to say that there was not even the coup or contra coup. Pretty much, yes. So that alone, wouldn't that be a problem with just throwing out the expert? Your expert entirely, because on that point, he does explain a conclusion based on his review of the report and his expert medical opinion. It shows coup and contra coup, whereas the government says the opposite. Well, that's basically, Judge, the way I read that, those are reasonable minds differing. That goes to tests under cross-examination in front of the jury. I do not believe that the case law then would support excluding an expert witness report because of a discrepancy between two experts. Unless you want to keep asking this issue on the deliberate indifference question, as opposed to excessive force. Could you just say a little bit about what the argument as to why there's deliberate indifference? There was obviously an altercation at the scene of the arrest. As soon as the sergeant, the superior, the ranking officer arrives at the scene, who should, in my understanding, is that he should come in cold, dispassionate. He sees what's going on there. He sees that Christopher Rojas is already under restraint. He's acting bizarre. His description was incoherent, aggressive, and violent, and says, take him to a medical facility. And he allowed, at that point in time, for the two officers that had the heat of passion at that moment to override and to veto his instruction, and to take him instead into the station house. Right there, in each police officer, in their sworn statement, right after this occurred, they're describing Christopher Rojas as incoherent, looking purplish, bugged out eyes. The veins in his temples were just bulging out. He's acting incoherently. Right there, that's enough information to have given that person medical attention instead of taking him into a police station. And the theory is what, that there was such a risk of a deadly overdose at that point that they should have taken him? Overdose or just a psychosis? Whatever the case may be, they say that they didn't know that he was intoxicated. Well, if it's psychosis, I'm just trying to figure out what the deliberate indifference is. He was either at risk of a physical problem, in which case I understand the need to go to medical attention. If it's just a psychosis, which is a bad thing, I don't fully understand what the argument is for why it was deliberately indifferent to restrain him in the hospital. I would have thought your argument was that he needed medical attention because he was manifesting himself in a way that showed his health was at risk. That's exactly the argument. I mean, even the physical characteristics that these police officers are describing was enough for a layperson to understand this guy needs medical attention. And that's where the deliberate indifference comes in. Thank you. Good morning. I would like to start by addressing the issue of the evidentiary issue regarding Dr. Shachar's report. It is obvious that Dr. Shachar's report did not comply with Rule 56 standards and did not conform with Federal Rule of Evidence 702. And the district court, within its gatekeeping function and relying in Hayes v. Douglas dynamic, determined after an analysis that the report was insufficient and unreliable to support an excessive use of force claim. Because it was replete of unsubstantiated conclusions. The expert report had no factual basis, no hint of an inferential process, and no hypothesis, consider unrejected. What do you mean it had no factual basis? The report at least identifies, it itemizes all of the material that the doctor relied upon in making the judgment that he makes. And I might add he also, before he talks about the facts of the case, he describes sort of medical conditions generally, the coup-contra-coup process, the way in which inferences can be drawn from bodily injuries. And he describes that. And then, having done that, then he applies those general medical propositions to the facts of the case. Now, it could have been done more fully, perhaps in a more erudite way, but there is an attempt to apply general medical propositions to the facts of this case before he draws his conclusions at the end. That's a pretty standard process for an expert, isn't it? No, Your Honor, I believe that the attempt was not sufficient. And when I mean about factual basis, I mean that he basically summarizes the injuries, and he jumps to the conclusion without any connection as to why that was the cause of that. It is our contention that he includes medical factors of a known origin, and he includes his assessment of the autopsy report with facts that are not included. For example, the coup-contra-coup injury is nowhere in the autopsy report. That meaning, since there was no external trauma to Roja's head in the examination, there could have not been, the subarachnoid hemorrhage could not be consistent with a coup-contra-coup injury. Because if there's no external trauma, that could not be the cause of his internal hemorrhage. Also, he defines stomping, or describes, sorry, stomping. And there is nothing, nowhere, not even an indicia of stomping in the autopsy report. There's not a boot or a mark of a boot or anything of that sort. It is our contention that... I thought he talked about evidence, a pattern of injury on the body that was consistent with stomping. I thought, actually, the suggestion is there's evidence of a sole print on the body. No, Your Honor, the word stomping is in the report when he describes these definitions. It's within the definition context of the report. But when he goes to the facts, he doesn't show where in the autopsy report, he doesn't mention where in the autopsy report there's a stomping. I invite the court to look at the autopsy report. There is no mention of a marking of a shoe or a boot, a police shoe or a boot, insinuating that there was a stomping. In evaluating the conclusory nature of the expert's report, we have two things. We have the autopsy report, and we have the pictures. Is he evaluating only the autopsy report, or is he evaluating the autopsy report and the pictures? I thought he was making a conclusion about the nature of the trauma based on his observation as an expert of the pictures. Yes, Your Honor. In my opinion, I believe that he saw the pictures when he made the assessment. So what is the significance of the fact that these things aren't mentioned in the autopsy report? He's a medical doctor looking at pictures, and he says, I see from the abrasions on the shoulder evidence of stomping. I see from looking at the pictures of the head evidence of head trauma that would support coup and contracoup. Your Honor, because the person who performed the autopsy didn't see any of that at all. But I'm not understanding what the significance of that is for determining whether the report comes in. The expert report. In other words, you keep suggesting that because the autopsy report doesn't identify those injuries, the expert is not allowed to draw the conclusion from the pictures that those injuries occurred? Well, Your Honor, if it's nowhere in the autopsy report, and if the patient doesn't show any, the patient don't show, and I invite the court to see the pictures, any trauma to his head. There is in the face, but not in the head. I guess that's what I'm asking. Is the expert allowed to base his expert report on his conclusions about the pictures? He's not held only to what the autopsy report says. Yeah, he's allowed to see other things. So how are we supposed to evaluate his conclusion about what those pictures mean? That would seem like the kind of thing that's for a jury ordinarily. Or are you saying it's just so blindingly obvious he's wrong in what he's saying the pictures show? Your Honor, it's not there. The evidence is not there. Did the district court make a finding on that point? The district court made an analysis regarding reliability, and he basically, and I direct the court's attention to the appendix at 800-803, where the court makes the analysis as to the fact that there was no reliable information provided to support his conclusions. Basically, the court determined that he made conclusions with no factual support. And also, I would like to call the court's attention to the fact that I don't think that the court should allow an expert witness with an unsubstantiated report to create a triable issue of fact, because that's what plaintiffs are basically trying to do. They're trying to create an issue of fact through an expert report. That's their job. I know that's their job, but I don't think they did the job they were supposed to do. At least I know they attempted, but I don't think it happened. It was done.  Anyone could go ahead and find an expert and create an issue of fact. Our suggestion is that they're trying to create an issue of fact based on a report that is lacking the process of reasoning as to why he reaches that conclusion. Suppose we said, you're right, report's out. We still have the pictures. The pictures show what on their face seemed like significant injuries. We also have a separate expert report from someone who says that in his experience, in the way police officers carry out their jobs, that should not result in injuries of this level of severity. Why wouldn't those two things alone create a triable issue of fact on excessive force? Your Honor, because there's two sets of evidence. We have the scene at the arrest, and there is evidence that there was a struggle. Candelaria, witness to the events at the scene of the arrest, stated that there was a big struggle, that it was a very difficult situation for the police officers. We have portable radios flying. We have a jacket that was torn. The three of them fall to the ground. There was a big struggle. It was a difficult situation, and Candelaria described it. We have a person who was very heavy, who fell on the ground, face down, and the only possible inference as to the lesions or abrasions is the only evidence in the record, the only, is that he sustained those injuries while he struggled with the police officers. What is the evidence as to the police station? The evidence, the only evidence, and it's uncontested, may I say, is that the police officers arrived at the police station, that the Rojas continued to be belligerent and violent, that they struggled to place him into the holding cell because he put his legs against the edge, that once they placed him inside the holding cell, he started kicking the officers and he started going wild. So they grabbed him by the pants, they placed him face down on the floor, they told him to calm down, and when he refused to calm down, they had to put ties in his ankles to control him. That's the evidence. Once that happened, they went out of the cell and they called paramedics. And everything happened in a matter of minutes. Not more than an hour and ten minutes transpired from the time that... If I follow, you're saying the record evidence, the extent that they show a source of the injury, the only reasonable inference is that it occurred in the parking lot. And with respect to the parking lot, the plaintiff is not contending there was any excessive force used. No, not only that. It's just based on speculation and conclusion. There's an evidentiary gap that they're filling with speculation and conclusions. There's nothing whatsoever. They're saying that it occurred in the cell. I thought there was a witness who testified to his physical condition at the police station before he entered the cell which suggests that he was not injured at all to the extent he was when his body is then found in the cell. So if that is correct, if there is such a witness, there is a basis for the inference that something was done to him, that something happened to him from the time he was put in that cell until his body is found. And there is a... I mean, that's... Are you suggesting that it would be improper to draw an inference that the officers did something to him to cause the bodily condition in which he was found at the time of his death? Your Honor, the evidence shows that he sustained injuries. We're not saying they were serious. And in fact, plaintiffs are not stating a denial of medical care because he had a physical incapacity or he was hurt physically. Plaintiffs are alleging that he was diminished, his mental capacity was diminished. And there was testimony that he was sweaty, he was incoherent and all that. But there is evidence that he sustained injuries. There is evidence in the record that he had a laceration in his shin, that he had abrasions in his body, that he had a cut in his lip. So obviously not all... When you get hurt, when you get hit, either falling from a bed or hitting yourself or whatever, it doesn't necessarily show up immediately. I mean, not necessarily because not all injuries were reflected at the moment. It doesn't mean that he didn't have... Let me ask you a question this way. The pictures show a level of injury that there is an expert, not Dr. Shacher, the expert suggests are extreme, given his expert view of the kind of force that is used to restrain prisoners or detainees. There is a question when those injuries occurred. Did they occur in the parking lot or did they occur in the jail cell? I'm trying to understand your argument. Is your argument that we don't know where they occurred or is your argument that it doesn't matter where they occurred because those injuries simply don't support a reasonable inference that they were of a level that suggests reasonably excessive force? My contention is, or defendant's contention is, that the injury... The only possible inference is that the injuries occurred during the arrest when there was a struggle with the police officers because the evidence at the police station... Okay, suppose I disagreed with you on that. Just considering the pictures of the injuries in combination with the expert's testimony about the kind of force that needs to be used to restrain a detainee, what is your position with respect to whether the pictures plus that expert suggest excessive force? There is no evidence that there was a beating anywhere. There's no evidence. We're basing everything on speculation. Those injuries could be from self-inflicted injuries. The person was crazy, was wild, was in the prison cell, he was kicking, he was going everywhere. It could have been from the struggle. We're not denying there was a struggle. You think it would be unreasonable to conclude it was a consequence of anything the police officers did to him? Correct. It would be unreasonable. No reasonable jury could conclude that it came from what the officers did. No. And also, Dr. Rodriguez, the forensic pathologist, and Dr. Lopez, the forensic psychiatrist, both agree that the supervisor hemorrhage, which is the cause of death, they agree that it was accidental in a manner and the cause was the hemorrhage, was caused by cocaine intoxication produced as revealed by the toxicology exam. And they also stated, especially Dr. Rodriguez, that the lesions or abrasions had no defined pattern as to a specific object like a fist or a blow. Could you just speak to the deliberate indifference point? So you said that it was only because of the mental impairment. They also reference, as they did an argument in their brief, various physical manifestations that might cause one to have concern. His skin was pale. His lips were black. There was purple bulging at the temples. Yes, Your Honor. And it was enough to lead the sergeant to think that he needed medical attention. So why don't those physical manifestations of concern support a reasonable inference that he was at risk, serious medical risk, in consequence of being intoxicated? As plaintiffs stated here today, they are basically arguing that the denial of medical care was based on a diminished or an apparent diminished capacity. No, no. I think that's, well, just stick with my interpretation. I understand that interpretation. They seem to be saying that because of the intoxication, he had pale skin, black lips, bulging purple temples, which one could think means he was at risk of an overdose, which is a medical, physical problem. Why is that not a reasonable inference? Your Honor, because there's nothing in the record, there's no evidence in the record suggesting that at the moment of the arrest, at the moment of the arrest when they made the decision to take him to the police station, he was exhibiting any serious risk of harm, meaning any serious risk of health. Well, how can you say that in light of the sergeant's observation of the contrary? What sergeant observation? I thought the sergeant who came to the scene suggested that he should be taken to an urgent care medical facility based upon what he saw. Because of his violent and aggressive behavior. How do we know that? How do we know it wasn't because of his pale skin, black lips, and bulging purplish temples? The record shows that he saw him so aggressive. But the record also shows that people were observing the detainee here with those physical characteristics at the same time. Yes, Your Honor. So why couldn't a jury determine that the sergeant must have been relying on that in saying he needed medical attention? Because he was alert, he was conscious, he was asked if he was okay, he stated that he was okay, and also he never requested, as with all the cases at plaintiff's sites regarding this issue, Godrold or Border, State of Lawson, he never requested medical care. He was never denied medical care. There was a minimal delay of minutes. We're not talking about ten hours. So this sounds like a good argument to be made to a jury. It doesn't sound like an argument that would justify keeping the issue from the jury. Well, Your Honor, there was nothing suggesting that he required medical care there. He never requested it. He was asked if he was okay. Even Candelaria stated that and testified to that. He was asked. There's no controversy about that. So once the police take into custody an individual who is exhibiting all sorts of medical problems, they have no obligation to respond to those unless the individual actually requests medical attention? No, Your Honor. Is that your position? They were prepared to grant him the medical care. In fact, they summoned the paramedics. The only problem was, and I remind the Court there's qualifying immunity in this case. I remind the Court that fact. The only issue was that we have a very violent person, a belligerent person, and the officers were concerned about the safety of the people at the CDT. All they wanted to do was control, you know, put the person under control, and then under controlled circumstances request the medical care. There's evidence that they did not wait until he displayed any serious medical need. They requested the care. Thank you. Your Honor, thank you.